v. Asher, albeit Khan. Ms. Tarrin from the Department of Justice, you are opening with 17 minutes. Thank you. Reserved three minutes. So if you're ready, we're ready. May it please the court. Ms. Tarrin's case conceded guilty to providing material support that designated foreign terrorist organization IT in the form of personnel. Ms. Tarrin, I'm not sure why, but your audio is sort of horrible. I know there's some feedback. Maybe try again. I don't know. Is this better? Yeah. Okay. Okay, great. May it please the court. In this terrorism case, Khan pleaded guilty to providing material support for the designated foreign terrorist organization ISIS in the form of was the statutory maximum of 15 years of imprisonment, and the district court buried downward by 90% in order to reimpose the original sentence of 18 months of imprisonment. This court should vacate the sentence and remand the case for resentencing again. Time on the ground that the sentence is substantively unreasonable for three main reasons. One, because the district court drastically discounted the seriousness of consents. Two, because the district court overstated Khan's good behavior upon returning from Turkey. And three, because the sentence created wide disparities with the sentences of similarly situated consents. First, the district court drastically discounted the seriousness of Khan's offense two ways. One way is that justifying the downward variance. The district court erred in second guessing whether Khan provided Garcia to be a fighter for ISIS. The district court said at the resentencing hearing that in its view, Garcia was not recruited, and that Khan's provision of material support to ISIS was solely in the form of giving Garcia money. But that account of Khan's conduct is directly contradicted by the guilty plea that the district court had accepted, and the stipulation of fact included in Khan's plea agreement. Khan pleaded guilty to count six of the superseding indictment, and there the government specifically alleged that Khan provided material support to ISIS in the form of personnel, and identified that personnel as Garcia. The district court accepted that guilty plea, and found that the guilty plea was supported by the stipulation of fact where Khan admitted that he recruited Garcia to be a fighter for ISIS. Ms. Tarrant, we have lots of cases in which there's a guilty plea and a stipulation of facts, but it's axiomatic that when the district court is sentencing, the district court is not limited to that statement of facts. That's the predicate for the guilty plea. You're not arguing for some different kind of rule, are you? No, your honor. I agree with you that the district court is not bound by the stipulation of fact. The stipulation of fact representing an agreement between the government and the defendant, something that the district court hasn't necessarily accepted. But here the district court did accept the guilty plea, and in count six of that indictment to which Khan pleaded guilty, the government specifically alleged that Khan provided Garcia to be a fighter for ISIS. That was his provision of material support. And so I do think a necessary implication of the district court's decision to accept that guilty plea is that the district court accepted, at least before sentencing, that Khan provided Garcia to be a fighter for ISIS. And then his decision second guessed that at the resentment hearing, and then it varied downward based on that finding a fact that was directly contradicted by the guilty plea amounted to error. Now the other way that the district court's view is error, that the district court's view that Khan did not provide Garcia to be a fighter for ISIS. Let's address that first point that you made. And it seems to me that sentencing a guilty plea and conviction is completely different from sentencing. And that whatever the district court may have accepted as the guilty plea does not in any way preclude him from making findings that may be inconsistent with the guilty plea, as long as it doesn't affect the conviction. Would you agree with that? Well, Your Honor, I think that in two, but like I would point to two recent terrorism cases in Second Circuit in Mamouni and the Seventh Circuit in Dawood, and there those courts were mistaking the defendant's sentences on the grounds that those sentences were substantively unreasonable, where the district court varied downward from the advisory guidelines range based on the finding of fact that was inconsistent with the guilty plea. And that's an abusive expression because it's a way in which the district court drastically discounts the seriousness of the defendant's defense. Now, if this court doesn't agree with that. Can I just want to make sure I understand your answer to Judge Jolly? If I pled guilty to a violation of 922 G in possession of a firearm, the district court obviously could not at sentencing find as a matter of fact that I did not possess the firearm, right? Correct. I mean, that I would assume that that would be completely Hornbook law. No one would dispute that. We'll obviously ask Mr. Adler in a minute. So if I'm understanding what your response is to the guilty plea and in the factual basis for it, I provided SRG as personnel name. That's being the material support to terrorism and then find at the sentencing hearing. In fact, you did not provide SRG or personnel in support of terrorism. Yes, exactly. Well, I made clear, I mean, as long as it doesn't affect the conviction. But I mean, I don't know that. And do you have authority for the fact or for your argument that a fact that is not necessary to support the conviction, it binds the judge to that same fact when he begins the sentencing process? Well, I think here the fact is that the government specifically alleged in count 60 the indictment that cons provision of the real support to ISIS was Garcia. And so the district court did accept that guilty plea. And the two authorities that I would point to in particular are United States versus Mamouni, where the Court of Appeals explained that once you accept the guilty plea, and here I think it was necessary for the district court to accept that guilty plea that the district court accepted that con provided Garcia to be a fighter for ISIS that you cannot thereafter very downward from the advisory guidelines range based on a finding of fact inconsistent with that guilty plea. But even if this court doesn't, even if this court doesn't agree with that, the district court view that con did not provide Garcia to be a fighter for ISIS is still clearly erroneous, not only because it's directly contradicted by the guilty plea and the stipulation of fact, but because it's contradicted by the record evidence case, district court minimized cons responsibility and maximized Garcia's responsibility by treating con more like a travel agent than the terrorist recruiter that he pleaded guilty to being by summarizing his conduct as just making a few phone calls, buying a plane ticket, and helping a friend who had made his own independent decision to join ISIS as a fighter when the record makes clear that without con Garcia could not have joined ISIS and he could not have made it to Syria. And if I had to point to just two events, the record that most powerfully demonstrate that point, I would note that when con and Garcia finally make their way to Turkey and con tells Garcia that he has to return to the United States for a family emergency, Garcia pleads with con not to leave and is saying, I did not come here with all that much cash. I do not have any connections. I got no clue. And so con gave Garcia all the cash that he had on him at that time. And then he gave him some of the most valuable assistance, which was in the form of the name, a manner in which just surreptitious with contact and the telephone number of cons contact ISIS facilitator Mohammed Zubi. Garcia didn't even know who Mohammed Zubi was at that time. The second event I would point to is that when con returned to the United States and Garcia reaches out to him in a panic because con contact ISIS facilitator Zubi wasn't responding to any of Garcia's messages. And so Garcia successfully makes the introduction and explains to Zubi that although con had to return to the United States, Garcia was still in Turkey and was pressing forward with their plan to be provided to ISIS as a fighter and convinced Zubi to help Garcia and con achieve their ultimate goal of providing Garcia to be a fighter for ISIS. And so because of con's efforts, the following day Garcia reported con that he had been delivered to Zubi and by August 11, 2014, he had joined ISIS as a fighter. By December of that year, he was dead. A message that Garcia's mother received indicated that he had died while fighting on behalf of ISIS in Iraq. And the district court never so much as mentioned that highly aggravating factor at the resentencing hearing, nor did the district court mention that con had very nearly succeeded in providing himself to ISIS as a fighter. Con was well aware of the consequences of his conduct. He called multiple people on several occasions that he was ready and willing to die while fighting on behalf of ISIS as a martyr. And he confided in his friend Iftikharu that he understood that as a result of his action, he would not be able to return to the United States because he would be acting against American troops. And despite all that, the district court insisted on treating con more like a travel agent than the terrorist recruiter that he pleaded guilty to be. I think we also cannot lose sight of the fact that as con confided in his friends, his idol was Anwar al-Awlaki, one of the most radical and dangerous extremists in recent history. He was killed in a U.S. drone strike in Yemen in 2011 and was the most significant recruiter for Ansar al-Sharia, having published online numerous hours of propaganda that to this day are still considered to be some of the most effective recruitment tools for extremists, particularly among English speakers like con and Garcia. And he espoused a violent strain of jihadist ideology that thought that it was the duty of all Muslims to defend Islam by committing an act in the homeland or by traveling abroad where the fight was and joining in the fight. And there can be no doubt that con was following in the footsteps of his idol, Anwar al-Awlaki. The record shows- Ms. Tarrin, let me ask you. Judge Hughes had two shots at this, and I'm sure the government made the same arguments both times that it's making now. Second go around on substantive unreasonableness, he went through the record, et cetera, et cetera. So my question to you, much of this is intensely factual. So are you making- is your main argument that the findings are clearly erroneous as a matter of law, or are you arguing to us that his factual findings are infected by legal error that pertains to terrorist cases? Do you understand my question? Yes, your honor. The answer to your question is both. One is that the district court committed legal error because he varied downward from the advisory guideline range based on the finding in the fact he made at the sentencing that would contradictify the guilty plea that the district court had accepted. All right. I read- let me stop you there. Okay. I read the cases that you cited. So, you know, like all cases, the facts are different and so on and so forth. So which is your target case that you say just unalterably makes these findings legal error? I mean, you cited several cases. I read them, you know, from the other circuit. They're all very factually intense. Yes, your honor. The case that I would point to first is United States versus Mamouni from the Second Circuit. And then in the Seventh Circuit, United States versus Dawood, we committed a 28-day letter on that case. Two very recent terrorism cases in which the courts of appeals vacated the defendant's sentences of 17 years and 16 years of imprisonment on the ground of both sentences, substantively unreasonable, where the district court drastically discounted the seriousness of the defendant's- But what do you do with the- what do you do with the fact- I mean, obviously, when you look at it, the guy had a long criminal history. He had a whole lot more stuff in his background than here. I mean, what do you do with that? I mean, clearly, when you- I pulled the case, I read it. But this guy had a long prison record. I mean, he had a deep record that's not existent here. So why is it that- why is that case informative here? Because, Your Honor, the government offers those cases not to compare the defendant's conduct, but compare it with the errors that the district court made. And they stand for the proposition that district courts can't base decisions at sentencing on a revisionist interpretation of the record that can't be squared with the guilty plea or the underlying offense conduct. And so that's how the district court committed legal error. But the district court view that can't not provide Garcia to be a fighter for ISIS is also clearly erroneous. Ms. Tarrant, are you aware of any case from our circuit or any other circuit in the United States that has ever said that a district court is free to make a finding of fact that is directly contrary to the factual basis for a plea agreement? I am not aware of such a case, Your Honor. Is there any case in our circuit or any other circuit in the United States that says that a district court can, at sentencing, make a factual finding that is inconsistent with a superseding indictment that has been accepted obviously as part of the plea agreement? I'm not aware of such a case, Your Honor. Okay. Are you aware of a case that says anything to the contrary? Or are you just saying there are no cases that address the question that was posed by Judge Oldham? I'm just not aware of any cases that permit a district court to make factual findings that are directly contradicted by the guilty plea in the circuit. There are no cases on the subject. Is that what you're saying? I'm not saying that. I'm just saying that I'm not aware of any cases where that ruling was made. So, I think also in our briefs, we fully lay out how the district court also overstated Khan's good behavior upon returning from Turkey. As this court recognized in its prior opinion in this case, upon returning from Turkey and while the United States, Khan continued to distribute extremist propaganda online, he continued to encourage Turkey to fight ISIS. Let me ask you this question. If we remand the case to the judge, and he addresses the issues that you say he should have addressed, and makes those, clears up any kind of legal error and says, I understand that's what the plea agreement said. I understand that's what the indictment said. But notwithstanding that, I exercise my discretion to reduce the sentence to 18 months as opposed to the 18 months. What would be your position then? Our position would be that that sentence is still substantively unreasonable. In part, because it creates wide disparities with the sentences of similarly situated defendants. And those, we've cited cases- I haven't seen any such, yeah, I don't think you have cited, at least to my satisfaction, any similarly situated defendant. Do you have one particular in mind in which the offenses of the particular defendant were similar to the one before us today? I would point to United States versus Sowell, United States versus Van Haffen, United States versus Shahnaz, and United States versus Mosul. These are all recent traveler cases in which those defendants traveled abroad to join or to attempt to join a foreign terrorist organization. And they were sentenced to anywhere between eight years and the statutory maximum of 20 years of imprisonment in the northern district of Texas. And that's without having successfully provided personnel to the foreign terrorist organization. Thank you, Your Honor. All right. All right. Thank you, Ms. Tarrant. You've reserved your adverb. May it please the court. Good morning, Judge Stewart, Judge Jolly, and Judge Oldham, and Ms. Tarrant. With all due respect to the government, there was no contradiction by Judge Hughes of the plea agreement that he accepted, including the factual basis. But before we get to it, can we just clarify the legal point, which is if I plead guilty to possessing a handgun, can the district court at sentencing find, as a matter of fact, I did not possess the handgun? No. Okay, good. So we've cleared up. So now it's undisputed between the two of you. And as a matter of this case, it's undisputed that you cannot find, as a matter of fact, a fact that is inconsistent with the factual basis for the plea agreement. That is correct, Judge Oldham. But I would argue here, I do argue here, that none of Judge Hughes's findings are inconsistent. What we're talking about is different interpretation of the underlying facts that Mr. Khan pleaded guilty to. Our judge was not recruited. So I'm looking at page 754 of the record. This is Judge Hughes speaking at the sentencing transcript. And this is a verbatim quote, quote unquote, Garcia was not recruited. That's correct, Judge Oldham. So then let's just compare it with the plea agreement. The plea agreement expressly stipulates that Khan recruited Garcia. Here's the quote. Starting in January 2014, while in Australia, Khan began recruiting Garcia to join ISIS, ROA 775. So it's directly contrary. If I could continue though with the Garcia was not recruited, he went on to state, the conversations make it clear they were both interested. They both wanted to do it. They encouraged each other. It was no different than two guys signing up for the Marines, except of course, one has a noble purpose and one has a despicable, inhumane purpose, which is a big difference. So, you know, I understand the government is arguing that Judge Hughes felt Mr. Sixto was not recruited. But in fact, what Judge Hughes was arguing is that Khan did not overcome any reluctance on Sixto's part. Khan did not force Mr. Garcia into this. This was something Mr. Garcia was interested in. There was no dispute. It was never contested by Mr. Khan or the court that Mr. Khan raised this issue with Mr. Sixto and was responsible for the beginning of this journey. But later on, Judge Hughes said, and this is on page 707 of the record, your crime was helping a friend do what you were doing, not sending him anywhere, but two young men decided they found a shortcut to fame and fortune. They began their journey into virtually certain death and you balked on hearing that your mother was ill in return. And unfortunately, what you did was a federal crime with a properly ugly label. So I think if you look at that one statement where Judge Hughes, there's no, I'm not disputing that he said that he was not recruited, but if you look at the totality of the circumstances, which is what I think the Supreme Court and the Fifth Circuit precedent requires, it's clear, it's abundantly clear that Judge Hughes knew exactly what had happened in this case, but that he took a different view than the government because at one point, importantly, when Mr. Khan decided I'm not going through with this, Mr. Garcia tried to recruit Mr. Khan into continuing on. So Judge Hughes' view of the facts underlying the guilty plea were that this was something that Khan had raised with Garcia. Certainly there was no dispute. Judge Hughes also said, I have read all of the, I have very carefully read all of the transcripts that I have been afforded of communications between Garcia and Khan. And at the end, it's Garcia that's urging Khan to come back and don't go away. And this is a great deal. So I think they were equally enthusiastic about it. Okay. Equally enthusiastic, a comparison to two people joining the United States Marine Corps and comparing Mr. Khan to a travel agent. Those are the three things that we, I think we can all agree that Judge Hughes specifically did on the record in his factual findings at the sentencing hearing. But the plea agreement that you signed on behalf of your client and your client also signed, the factual basis says the defendant is pleading guilty because he is in fact guilty of the charges contained in count six of the indictment. I'm sorry, the superseding indictment. And the superseding indictment in turn says, quote, Khan did unlawfully and knowingly attempt to provide material support and resources, including services and personnel, including Garcia. So that's not two people joining the Marine Corps. That's not somebody who is simply a travel agent. And that is not two people who are equally enthusiastic. That is one person providing the other one as material support. And it's it's flat right there in black and white in the thing that was signed. And I thought we agreed at the outset that you can't make factual findings instant with the factual basis and the superseding indictment accepted by the district court. I did agree with you, Judge Oldham, and I continue to agree with you. What I disagree with is the contention that Judge Hughes took an inconsistent or contradictory position. He has a different view of the evidence. He weighed the evidence as he's entitled to as a district judge differently than what the government is presenting here. And with respect, what you appear to be positing here, Judge Hughes, as he's entitled to weighed the sentencing factors. He cited, I think, 15 different reasons for the sentence in the statement of reasons and felt that Mr. Sixto made a decision on his own to continue or to join this, to continue doing this and to continue doing this even after Mr. Khan said, I'm not going further with this. So I don't think this is a contradiction. I'm not, Judge Oldham, with all the respect, I'm not happy that Judge Hughes decided to say Khan was not recruited. I think what he meant to say, and I think what the record is clear if you read it in totality, is this was not a situation where the LSU football program recruits a high school athlete and goes after him and comes nonstop and offers him incentives. This was a situation, you know, recruit has a number of instead of an LSU, I apologize, but recruit can have a number of different meanings. And I think, again, if you read the entire sentencing transcript, both sentencing transcripts, it is blatantly apparent that Judge Hughes felt Khan bore some responsibility for bringing Garcia into this, but that Garcia also bore responsibility for making the decision on his own to join, to continue and to keep going, even though Khan said, I'm not going through this anymore. So I don't agree that, I don't think the record supports the idea that this was a contradictory position or even an inconsistent position. I think it's, Judge Hughes's findings were entirely consistent with the plea agreement. He just doesn't view the word recruit in the way the government is arguing, that it means that without Khan overcoming Garcia's reluctance or disagreement or constant haranguing, that's not what happened here. The recruiting here was what we admitted to at the plea and what Judge Hughes specifically found at sentencing. Khan brought six to the room. You say recruit has other meanings other than a single meaning. What, how would you define recruit to suit your purposes here? Um, I think Khan offered this to Mr. Garcia. Khan presented this to Mr. Garcia. Khan was clearly, and unfortunately, and stupidly interested in this and was enthusiastic about it. He presented it to Mr. Garcia and Mr. Garcia almost immediately said, yes, I will do this. There's no, there's no evidence in the record of Mr. Garcia saying, I'm not going to do this. You're crazy. Don't, you shouldn't even be doing this. Well, with respect, there's a little bit of that evidence, right? I mean, because when Khan comes back to the United States and Garcia freaks out, because now he's alone, he's the text message, dude, you can't pull stuff like that. I didn't come with all that much cash. I have no connections. I've got no clue, WTF, end quote, record on appeal of 512. So, I mean, that doesn't sound like someone who's equally enthusiastic. Well, what I was talking about in answer to Judge Dolly's question, Judge Oldham, is that the recruiting took place in the, in the beginning discussions when Mr. Khan raises with Mr. Garcia. And there was none of that reluctance. Then the reluctance that you just described as Mr. Sixto wanting to continue on, just not knowing what to do and not having sufficient funds. So that's not recruiting at that point, the recruiting quote unquote, recruiting the presentation or the offering by Mr. Khan occurred at the beginning of this I think this will be a good thing to do. That is where he presented it. That is where Mr. Khan offered it to Mr. Garcia and Mr. Garcia joined. I don't think you can look at the tail end of it, or frankly, if you're going to look at the tail end of it, Judge Oldham, then I think you also have to look at the fact that prior to that discussion, immediately prior to that discussion, Mr. Garcia was trying to recruit Khan into coming back and going on with him. So the recruiting that I think Judge Hughes focused on was the initial development of the relationship of the discussion, I'm sorry, between these two men about, is this a good thing to do? Mr. Khan pleaded guilty to that. He still stands by that. He has readily admitted his guilt for doing that both for himself and for Mr. Garcia. Judge Hughes weighed all of that, saw that in record, but decided that there was more at play here than simply Mr. Khan forcing, or I think to use a nowadays politically incorrect term, Shanghaiing Mr. Garcia into this, or press-ganging Mr. Garcia into going. There was no force. There was no overcoming of will. Using the football analogy that you referred to earlier, is the analogy apt to say that this was one football player at the University of Texas, or not saying to his buddy, why don't we go play for Texas? Yeah, I think that's exactly right. It was Mr. Khan said, this is what I'm interested in doing, and essentially said, are you interested? You want to come with me? And then at the very end, of course, after Mr. Garcia has, quote, decided essentially to join the football team, and Mr. Garcia leaves, Mr. Khan, I'm sorry, Mr. Khan leaves, Mr. Garcia says, well, I'm still going to play football. You presented this to me, but I'm still making the decision on my own to play football. So Judge Hughes- Not really. I mean, because the thing that I can't really understand is that after Khan leaves and Garcia is there alone, who is the one who introduces them to the context in Turkey? Who is the one who encourages them to go to the camps? Don't stop at the first camp, move on till you get to the ISIS camp. Who was the one back home, posting on the internet, trying to raise money to support this whole endeavor? And then who was the one who pled guilty to providing material support, including personnel, namely Garcia, to ISIS? I mean, the football analogy breaks down by the factual basis that your client signed. Judge Hughes- Well, I don't, again, with respect, Judge Oldham, I don't agree. I think the football analogy, and I'm not a big football fan, but I think it still applies. Mr. Khan does not dispute, he has not disputed at the district court during any of the proceedings. He did not dispute during our first appearance before this now that he pleaded guilty pursuant to that factual basis and that plea agreement. The question here, I think for this court, revolves around what the government is asking this court to do is reweigh the sentencing evidence and come up with a decision that is different and supplants the district court's decision about the weight of the evidence. Mr. Adler, let me come at it a different way. Well, just a different set of questions than the football deal. I don't know. We could have pulled Ole Miss in, all these teams on a downward torque. So it's equal opportunity. None of them worried about being in the playoffs. But anyway, you know, at the re-sentencing, you know, it's unjustified the terrorism enhancement. So let's talk about that. I mean, we spent time talking about the plea and the agreement, but he applies the terrorism enhancement, which, you know, puts the case in a different orbit than just some other sentencing. All right. Now, having said that, the range was 180 months, which is a lot of time. Judge Hughes imposed 18 months. That's a lot of distance between 180 months and 18 months to say that the judge applied the terrorism enhancement to what the government argues, though a lot of those cases, to me, are distinguishable. But the government argues here that the sentence is substantively unreasonable, you know, notwithstanding the has been applied, does that truly become a factual sort of mesh of issues? Or does the terrorism, once he applied it to him, in other words, does that torque this into another atmosphere, where 18 months, something about that gives a little pause? You understand what I'm asking? I mean, if there were no terrorism enhancement, you know, that might be a different deal. But the fact is, it's undisputed, he applied the terrorism enhancement. So I guess my question is, what does that mean? In this context, taking the plea agreement in account, and once the judge applies the terrorism enhancement, how can the 18 months be squared, you know, with that? Do you follow me? I think I do, Judge. And I'm sure you'll tell me if I don't, but let me take a shot at answering. All right. So in the statement of reasons, Judge Hughes actually imposed a departure and variances in this case. And the departure, he based it upon the criminal history aspect of the terrorism enhancement. Judge Hughes, again, totality of the circumstances, Judge Hughes is clearly not in agreement in this case, that Mr. Khan, who has no prior criminal history, should be moved into the worst criminal history category, category six, because of the terrorism enhancement. Judge Hughes is entitled to do this under Supreme Court precedent that says the district court can disagree with sentencing guidelines based on a policy decision. And that is exactly the wording that Judge Hughes used in the statement of reasons. So although the government argues that it's a difference between 15 years and 18 months, when you start to unpack this and look more closely at it, if you take Mr. Khan out of criminal history category six because of the departure, it is not as great a change in the sentence range as the government is arguing. Then when you add in the essentially 15 other factors that Judge Hughes cites for a variance in the statement of reasons, Judge Hughes has the discretion, as far as I know, Judge Oldham, in the case where he said the statutory interpretation requirement is read the statute, read the statute, read the statute. I think the same applies here for case law, at least for attorneys. And we have to read the case law, read the case law, read the case law. And the case law says the district court is well within its discretion to weigh the sentencing factors, and that this court will not re-weigh them simply because there's a disagreement about how the district court weighed them. There is some ambiguity, if you will, as far as how a district court, the weight of the evidence, or how a district court is to weigh it. I mean, we can look at things like the word count, the number of times Judge Hughes addressed a specific factor or talked about the terrorist enhancement. We could talk about the time spent during the proceedings discussing it, but none of that, as Judge Oldham wrote, the district court does not have to give you know, completely explicit instructions or a description as to why a particular sentence was imposed. That's, I'm sorry, that's Judge Oldham in U.S. v. Smith. And Judge Jolly wrote something similar in U.S. v. McElway. So you came armed for bear, huh? You're going to push our cases back on them. You got one for me, too? Yes. Judge Stewart, you wrote, or you were on the panel in U.S. v. I'm going to pronounce it wrong, I-Yellowton, a 2019 case that... Well, that's all right. You've cleared that you equal opportunity. You have one for all three of us. Go ahead with your argument. What was written in that decision that you the import of the sentencing issues than this court is? And I don't, I'd be surprised if the government disputes that. The question is, did Judge Hughes validly explain his sentence, thoroughly explain his sentence? Look, I've been doing this work a long time. It's my 27th year. I know this is an unusual sentence, but this court has affirmed much greater variances in the upward direction, you know, affirming the government's request sometimes into the 1,200% increase where district judges have found it appropriate. And frankly, and with all due respect to those judges, with less explanation than Judge Hughes provided here. So... Can I ask you one follow-up question about the policy disagreement thing? Because I'm with you on, I understand the not re-weighing the facts. I'm more interested in the legal problem. And one of the things that I noticed that you brought up at the sentencing hearing is this judge... I'm talking to Judge Hughes. I just want to make sure that you clarify for record that part of your decision is based on a policy disagreement with the sentencing guidelines. And you cited our 2009 case in Madrigal and Santiago. So obviously that's the same year as Spears from the Supreme Court of the United States. Both of which say that yes, district courts can express policy disagreement with the guidelines, but they can't do that as an excuse for treating, because they think it's an unduly fair, I'm sorry, an unfair result for a particular defendant. It needs to be across the board as a policy disagreement. And so in Judge Hughes' response to you, this is all in page 765 of the sentencing transcript, his entire justification for adopting the position that you proffered to him was that it was unfair as to Mr. Khan. Yeah. I think Judge Hughes' problem was, and again, I don't mean any disrespect by this terminology, but the legal fiction we've created that someone with no criminal history suddenly has criminal history because of the terrorist enhancement. I don't think Judge Hughes would based on a full reading of both sentencing transcripts, if the terrorism enhancement had just increased offense levels because of the conduct in the case in which the defendant was convicted, either by guilty plea or losing a trial. I don't think Judge Hughes would have raised any kind of objection to that whatsoever. It was this idea that we're going to, I think that's the term you use, we're going to give someone criminal history that simply never occurred. So do you think that if the guidelines said that for material support of terrorism, including personnel to its foreign terrorist organization, the guideline ranges 180 months, it didn't say, the guidelines sometimes say such things, right? Where it doesn't use the offense level in the criminal history category table just says 180 months, Judge Hughes would have said, okay. No, I don't, I'm not going to say that. I mean, it might help my argument, but I don't think I can say that. I think, you know, there's no mandatory minimum here for this sentence, for this offense. Okay. If Congress had wanted a mandatory minimum, they certainly could have proposed one. I think that what you raise here, if the offense level was increased to 180 months, then that's where the variances that Judge Hughes identified, more than a dozen basis for changing that offense level based on the history and characteristics of the defendant, the nature of the offense, his post-sentencing conduct, all of the things that Judge Hughes described at length in the statement of reasons. So I think, again, this is not just a case, I don't think it's appropriate for this court to just say, oh, well, he went from the government's request for 15 years to 18 months. He did it in a very methodical, well-reasoned way that included a departure for one reason and a variance for, by my count, 15 different reasons. All right. Thank you, Mr. Adler. Your time is exhausted. Any additional questions, Judge Jolly or Judge Oldham for Mr. Adler before we let him go? All right. Thank you, sir. We're back to you, Ms. Tarrin. You've reserved three minutes for rebuttal. I just have two final points, Your Honor. One is that the government agrees that it's within the district court's discretion to carry downward from the advisory guidelines rank based on a policy disagreement with the terrorism enhancement, but courts of appeals have recognized that sentences for terrorism cases can nonetheless be subjectively unreasonable where the district court fails to give appropriate weight to the unique dangers that a terrorism offense poses. For example, in Mulroney, there the court of appeals explained that the offense there was attempting to kill a federal officer in the name of ISIS and that the district court failed to appreciate that this was a pre-authorized ISIS terrorist attack on U.S. soil. And in the same way here, the district court says that Khan and Garcia were simply too young, naive, teenage, stupid kids. To that view, it was a very real and serious threat that ISIS terrorism poses and it ignores the consequences of Khan's conduct in the case. Finally, with respect to Mr. Adler, who compared this case to a football and provided a football example, this is a very serious terrorist case. Because of Khan's conduct, Garcia is dead. And the district court, however we want to describe what the district court did, whether it was a semantic difference, a disagreement about interpretation, but the district court view is directly contradicted by the guilty plea and the record establishes that without Khan, Garcia could not have coined ISIS and he could not have made it to Syria. For all these reasons, the government respectfully requests that this court vacate the sentence and remand the case for re-sentencing on the grounds that the sentence is substantively unreasonable. All right, thank you. I'm sorry. Go ahead. No, go ahead. One quick question. Yes, yes. Ms. Tarrant, if the panel were to reverse the sentence or I guess vacate the sentence and remand, do you think it would be appropriate to remand it to the same district court? Although the government hasn't requested reassignment, the government would not object to this court reassigning the case to a different judge if this court concluded that were appropriate. But that's, there's no, well, you haven't argued that and there's no basis of showing any bias or anything else and we don't normally reassign to another judge unless it's clearly they can't follow what we say. So since you've been asked that question, can you urge anything that fits into the cases where we reassign? We are not requesting reassignment, your honor. But we would not object to this court doing that. Oh, I'm sure you wouldn't. But anyway, that's a fair answer. Can't get in trouble with that one. I understand. All right. Thank you to both counsel. We like oral argument. It helps us with these tough cases to try to unravel. As should be evident to you, we've read the briefs and the record and a whole lot else to gear up for it. It is a very serious case and we're not making it safe. We use analogies to try to drill through some of this legalese, but the court knows it's a very serious case and we don't get terrorism cases all the time and we'll take a deep dive in it and we'll figure it out. But we're aided by your briefing and your argument and Mr. Adler, your court appointed representing this case. And I take it you handled the case below as well as here. So you've done tremendous duty in this case and the court always wants to applaud our court appointed attorneys who take these cases and you've held a number of them. And so we take this opportunity to thank you once again for being court appointed and serving the court, not only representing your client, but really bringing excellence to the task. And our work is made better when we have great lawyering on both sides. And in this case, we do. So we thank you for your service. And with that, that concludes the argument in this case. Have a great day.